**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**CASE NO.: 6:22-cv-01761-PGB-DAB**

BRENDA WALKER, individually and
as Personal Representative of the Estate
of HENRY LEE WALKER, deceased,
for the benefit of his survivors and the
Estate,

      Plaintiff,

v.

CORIZON HEALTH, INC., a foreign
limited liability company, NURSES
JANE DOES and NURSES JOHN
DOES 1-8, individually and as
employees of CORIZON HEALTH OF
FLORIDA LLC, CHS FL, LLC d/b/a
YESCARE, CHS TX, INC. d/b/a
YESCARE, Wayne Ivey, in his official
capacity as Sheriff of Brevard County,
Florida; MAJOR ROSS TORQUATO,
in his supervisor role as jail watch
commander; and DEPUTIES JOHN and
DEPUTIES MARY DOES 1-8,
individually and as an employee or
agent of the Brevard County Sheriff's
Office,

      Defendants.

_____/

**DEFENDANTS CORIZON HEALTH, INC., CORIZON HEALTH CARE**
**OF FLORIDA, LLC, CHS FL, LLC D/B/A YESCARE AND CHS TX, INC.**
**D/B/A YESCARE'S AMENDED MOTION TO DISMISS**

Defendants Corizon Health, Inc., Corizon Health Care of Florida, LLC[1], CHS FL, LLC d/b/a YesCare and CHS TX, Inc. d/b/a YesCare[2] (collectively "YesCare") file their Amended Motion to Dismiss as follows:

## MOTION

1.     Plaintiff Brenda Walker ("Walker") individually and as Personal Representative of the Estate of Henry Lee Walker ("Decedent") filed suit, bringing prisoner civil rights and state law negligence claims. The operative pleading is the Complaint ("Complaint") [ECF #1].

2.     None of the claims are properly pled and Walker failed to satisfy a condition precedent to bringing the state law claims.

3.     Therefore, the Complaint should be dismissed.

## MEMORANDUM OF LAW

### I.     BACKGROUND

The pertinent facts can be summarized. The Decedent was arrested for a DUI on September 26, 2020 in Brevard County and was taken to the Brevard County Jail. YesCare provides medical and mental health services in the jail through its employees, including nurses. The Decedent committed suicide in the

---

[1] Plaintiff names this Defendant Corizon Health of Florida, LLC. The proper name is Corizon Health, Inc., which is already a Defendant in this lawsuit.
[2] Plaintiff names Defendants Corizon Health, Inc., CHS TX, Inc. d/b/a YesCare Corp., and CHS FL, Inc. d/b/a YesCare Corp. These companies are one in the same and are all under the same corporate umbrella of YesCare Corp.

jail the day following his arrest [ECF #1, ¶¶25-26]. The essence of the claims is that the Decedent was in the jail two years earlier and was put on suicide watch, so YesCare employees should have known he was suicidal in 2020 [ECF #1, ¶¶30-36, 42].

## II.   ARGUMENT

### A.   Dismissal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Iqbal*, 556 U.S. at 678

(citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*, 550 U.S. at 555 (stating that "[f]actual allegations must be enough to raise a right to relief above the speculative level"). This inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## B.   John Does Not Allowed

Walker includes fictitious party nurses as defendants [ECF #1, ¶16 and Counts II, III and V]. Fictitious pleading is not allowed unless "the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir.1992)); *New v. Sports & Rec., Inc.*, 114 F.3d 1092, 1094 n. 1 (11th Cir. 1997). The Complaint does not contain any factual allegations as to what any of the fictitious parties allegedly did and contains no descriptions allowing for their identification. Therefore, Counts II, III and V must be dismissed as to these Defendants.

## C.   The Negligence and Wrongful Death Claims

Walker brings medical malpractice claim against YesCare in Count I; a negligence claim against the fictitious nurses in Count II, and a wrongful death claim seemingly against the same fictitious nurses in Count V.[3] Because the claims assert death was caused by negligence, the negligence claim cannot be brought. Florida's Wrongful Death Act establishes the following statutory "[r]ight of action":

> Right of action.—When the death of a person is caused by the wrongful act, negligence, default, or breach of contract or warranty of any person, including those occurring on navigable waters, and the event would have entitled the person injured to maintain an action and recover damages if death had not ensued, the person or watercraft that would have been liable in damages if death had not ensued shall be liable for damages as specified in this act notwithstanding the death of the person injured, although death was caused under circumstances constituting a felony.

§768.19, Fla. Stat. (2022).

The Wrongful Death Act also provides that if death is the result of negligence, the claim must be brought for wrongful death, not negligence. § 768.20, Fla. Stat. (2022)("When a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate.").

While the Wrongful Death Act creates a new cause of action, it is derivative

---

[3] It's "seemingly" because the claim is very unclear. The title includes the fictitious defendants, along with the other Defendants. But the claim is limited to the "Individual Defendants," which is an undefined term [ECF #1, ¶79].

to a claim the decedent had prior to death. *Toombs v. Alamo Rent-A-Car, Inc.*, 833 So. 2d 109, 111 (Fla. 2002). The Florida Supreme Court explained that "[w]hile the Wrongful Death Act creates independent claims for the survivors, these claims are also derivative in the sense that they are dependent upon a wrong committed upon another person. No Florida decision has allowed a survivor to recover under the wrongful death statute where the decedent could not have recovered." *Valiant Ins. Co. v. Webster*, 567 So. 2d 408, 411 (Fla. 1990), receded from on other grounds by *Gov't Employees Ins. Co. v. Douglas*, 654 So. 2d 118, 119-20 (Fla. 1995).[4] In this instance, the derivative claim is what's brought in Count I, but it and the other state law claims fail because Walker did not comply with a condition precedent.

Florida's Medical Malpractice Act, contained in Chapter 766, Florida Statutes (2022), sets out a complex pre-suit investigation procedure that both the claimant and defendant must follow before a medical negligence claim may be filed in court. *See Kukral v. Mekras*, 679 So. 2d 278, 280 (Fla. 1996). As part of this procedure, section 766.106(2), Florida Statutes (2022) requires that "[after] completion of the pre-suit investigation pursuant to section 766.203 and prior to filing a claim for medical malpractice, a claimant shall notify each perspective defendant, and if any perspective defendant is a health care provider licensed under

---

[4] The Act also requires a listing of the survivors of a wrongful death estate. §768.20, Fla. Stat. (2022). That wasn't done.

chapter 458, chapter 459, chapter 460, chapter 461 or chapter 466, the Department of Health by certified mail, return receipt requested, of an intent to initiate litigation for medical malpractice."

Section 766.203(2)(b), Florida Statutes (2022) requires that corroboration of reasonable grounds to initiate medical negligence litigation shall be provided by the claimant's submission of a verified written medical expert opinion from medical expert at the time the notice of intent to initiate litigation is mailed.  The corroborating expert opinion requirement is designed to prevent the filing of baseless litigation.  *See Fort Walton Beach Medical Ctr. Inc. v. Dingler*, 697 So. 2d 575 (Fla. 1st DCA 1997); *Archer v. Maddux*, 645 So. 2d 544 (Fla. 1st DCA 1994).

In identifying those actions to which the required pre-suit notice and procedures apply, section 766.106(1)(a), Florida Statutes (2022) defines a "[claim] for medical malpractice" as a "claim arising out of the rendering of or the failure to render, medical care or services."   Sections 766.201-766.212, Florida Statutes (2022) concern pre-suit investigation and arbitration of "medical negligence claims."  Section 766.202(6), Florida Statutes (2022) defines "medical negligence" as "medical malpractice, whether grounded in tort or in contract."  The Florida Supreme Court has held that "Chapter 766, notice and pre-suit screening requirements apply to claims that 'arise out of the rendering of or the failure to

render medical care or services.'" *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 949 (Fla. 1994). The pre-suit requirements apply to incarcerated plaintiffs. *See* *O'Hanrahan v. Moore*, 731 So.2d 95 (Fla. 4th DCA 1999); *Okaloosa County v. Custer*, 697 So.2d 1297 (Fla. 1st DCA 1997).

The initial question presented here, whether Florida's Medical Malpractice Act applies to cases in federal court, has been answered in the affirmative. *See* *McMahan v. Toto*, 256 F.3d 1120 (11th Cir. 2001); *Woods v. Holy Cross Hosp.*, 591 F.2d 1164 (5th Cir. 1979) (applying the Erie doctrine to hold that the Florida medical malpractice pre-suit procedures must be followed in federal court);[5] *Clark v. Sarasota County Public Hosp. Bd.*, 65 F.Supp.2d 1308, 1314 (M.D. Fla. 1998).

The second question is whether Walker complied with the presuit procedure. She did not.

The Act's definitions and decisions of Florida courts make plain that the dividing line between medical malpractice and other negligence claims is "whether the defendant is directly or vicariously liable under the medical negligence standard of care as set forth in section 766.102(1), Florida Statutes." *Broadway v. Bay Hospital, Inc.*, 638 So. 2d 176, 177 (Fla. 1st DCA 1994); *see* § 766.106(1)(a), Fla. Stat. (2022)(claims for medical negligence or malpractice are those "arising

---

[5] The Eleventh Circuit in an en banc decision, *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

out of the rendering of, or the failure to render medical care or services"). The standard of care is in section 766.102(1), which states the "prevailing professional standard of care for a given health care provider shall be that level of care, skill, and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers." § 766.102(1), Fla. Stat. The Florida Supreme Court has held that the terms "diagnosis," "treatment," and "care" as stated in the Act are not ambiguous:

> In ordinary, common parlance, the average person would understand "diagnosis, treatment, or care" to mean ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness.

*Silva v. Sw. Fla. Blood Bank, Inc.*, 601 So. 2d 1184, 1187 (Fla. 1992).

Labeling a claim as one not involving medical negligence is not dispositive of this issue. *See Omni Healthcare, Inc. v. Moser*, 106 So. 3d 474, 475 (Fla. 5th DCA 2012) (finding that although the plaintiff attempted to allege a claim in simple negligence, the claim sounded in medical negligence); *Dr. Navorro's Vein Ctr. of Palm Beach, Inc. v. Miller*, 22 So. 3d 776, 778 (Fla. 4th DCA 2009) (finding the plaintiff's claim of ordinary negligence for laser hair removal as one for medical malpractice despite the "plaintiff's creative dance around the obvious").

The decedent committed suicide and the claim is for failing to put him on suicide watch, which requires the exercise of professional judgment by YesCare

employees, in this instance, nurses. Nurses are entitled to presuit notice, and because it is to be held vicariously liable, so is YesCare. *Weinstock v. Groth*, 629 So. 2d 835, 838 (Fla. 1993). The claims are based on the provision of medical care, as the nurses should have allegedly read the medical records and diagnosed the Decedent as suicidal. Additionally, the Complaint is replete with allegations of negligent medical care [ECF #1, ¶¶32, 35, 38, 39, 42, 49-55].

Walker was required to serve presuit notice according to Chapter 766, Florida Statutes (2022), to include an affidavit from a qualified medical expert within the two-year statute of limitations. Walker's failure requires dismissal with prejudice.

### D.   Constitutional Claims

Walker brings two constitutional claims: Count III against all Defendants,[6] and Count IV against YesCare and the Sheriff. Neither is sufficiently pled.

42 U.S.C. § 1983 was enacted as part of the Civil Rights Act of 1871, as the "Ku Klux Klan Act."  The section provides a private, federal remedy for persons deprived of federal rights under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party

---

[6] This claim improperly mixes individual, corporate and governmental parties, where pleading standards are different. For this Motion, Count III is considered to be against individuals.

injured in any action at law, suit in equity, or other proper proceeding for redress.

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979). As such, it is a mechanism for bringing claims for federal constitutional or statutory violations. To prevail on a claim brought through section 1983, a plaintiff "must show violation of a constitutionally protected liberty or property interest and deliberate indifference to constitutional rights." *Rivas v. Freeman*, 940 F.2d 1491, 1496 (11th Cir. 1991); *West v. Atkins*, 487 U.S. 42, 48 (1988).

To state a prisoner section 1983 claim against individuals, a complaint must contain allegations of deliberate indifference. That requires allegations that the inmate suffered an objectively serious medical need, and the defendants intentionally disregarded that need. *See Farmer v. Brennan,* 511 U.S. 825, 833-38, (1994); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1191 n.28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law). A serious medical need is one that has been diagnosed by a physician as

needing treatment or one for which even a layperson would recognize the need for a doctor's care.  *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir.1999); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir.1995) (stating that a serious medical need is one obvious to layperson or supported by medical evidence, like a physician's diagnosis).

To satisfy the subjective component, a defendant must be "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and must also have drawn the inference." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008) (quotation omitted and alterations adopted). However, "should haves" are not grist for constitutional litigation. "There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer*, 511 U.S. at 838). In this context, deliberate indifference requires: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) conduct that amounts to more than gross negligence. *Id.*

However, "should haves" are not grist for constitutional litigation. The Supreme Court has stated that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104-06 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). In *Estelle*, the

court reinstated the district court's dismissal of a prisoner's section 1983 complaint for failure to state a claim. Recognizing the plaintiff's primary claim was that "more should have been done" to diagnose and treat a back injury, the Court explained, "[a] medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Id.* at 107. "There is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not . . . .'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (quoting *Farmer,* 511 U.S. at 838); *see Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996) (holding that "negligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk); *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002).

In the suicide context, "deliberate indifference requires that the defendant deliberately disregard a strong likelihood rather than a mere possibility that the self-infliction of harm will occur." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1115 (11th Cir. 2005) (quotation omitted) (emphasis in original). "[T]he mere opportunity for suicide, without more, is clearly insufficient to impose liability on those charged with the care of prisoners." Id. (quotation omitted). "Absent knowledge of a detainee's suicidal tendencies . . . failure to prevent suicide has never been held to constitute deliberate indifference."

*Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).

A recent decision from the 11th Circuit is instructive. *In Jacobs v. Ford*, No. 21-13411, 2022 LEXUS 10265, 2022 WL 1123384 (11th Cir. April 15, 2022), the court considered a very similar fact pattern. Jacobs was twice arrested, the first for DUI in Bay County. During that arrest, an officer considered he might be suicidal and precautions were taken. He was arrested again two months later for failure to appear. He was drunk when he entered the jail and was not on suicide watch. He hung himself the same day. *Id.* at *3-4.

The case went to the court after dismissal. The court affirmed:

> With respect to Jacobs's primary § 1983 claim against the four sheriff's office employees who came into contact with him on May 2, 2019, we begin by noting what Jacobs has not pleaded: that he told anyone at the jail that day that he was suicidal. Instead, Jacobs argues that a court could reasonably infer that Officer Cunigan, Officer Nelson, Deputy Brown, and EMT Miller knew he was suicidal on May 2 based on two other facts alleged in his complaint: (1) almost two months prior, on March 7, 2019, he told a different officer he was suicidal when he was initially arrested and brought to the Bay County jail, and the officer recorded that statement on an inmate welfare questionnaire; and (2) he was visibly intoxicated and told some of the defendants that he was anxious, mentally ill, and off his medications when he returned to the jail on May 2. None of these facts, taken separately or together, gives rise to a reasonable inference that any defendant knew Jacobs was suicidal on May 2.

> Jacobs's argument that a court could reasonably infer the defendants' knowledge that he was suicidal on May 2 from the fact that a different officer recorded his statement during his separate March 7 jail visit that "he wanted to run out in traffic and kill himself" lacks merit. Jacobs's second amended complaint is devoid of factual

specifics indicating that any of the four defendants who came into contact with him on May 2 ever saw or read the inmate questionnaire Officer Thomas filled out during Jacobs's separate jail visit almost two months prior. In a series of boilerplate assertions, Jacobs alleged in his second amended complaint that, "based on the March 7, 2019 Inmate Welfare Questionnaire," Officer Cunigan, Officer Nelson, Deputy Brown, and EMT Miller each "knew and/or but for the reckless disregard and deliberate indifference to his civil rights would have known that [Jacobs] was suicidal and that there was a strong likelihood that [Jacobs] would attempt suicide." These allegations are "naked assertions devoid of further factual enhancement" that cannot save Jacobs's claims from dismissal. *See Iqbal*, 556 U.S. at 678 (quotation omitted and alteration adopted); *see also Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) ("[I]f allegations are indeed more conclusory than factual, then the court does not have to assume their truth."). Rote allegations aside, Jacobs's second amended complaint pleaded no facts indicating that Officer Cunigan, Officer Nelson, Deputy Brown, or EMT Miller even knew about the March 7 questionnaire or knew what it said when they came into contact with Jacobs on May 2.

Jacobs's argument that a court could reasonably infer the defendants' knowledge that he was suicidal from the fact that he was visibly intoxicated and told some of the defendants that he was anxious, mentally ill, and off his medications on May 2 lacks merit as well. None of those factors would give a prison official knowledge of a strong likelihood that a detainee would try and end his own life. At bottom, Jacobs's second amended complaint simply lacks facts allowing for a reasonable inference that any of the defendants who had contact with Jacobs on May 2 had any idea he might try and kill himself that day. Thus, Jacobs failed to plead a plausible claim of deliberate indifference.

*Id.* at 10-13 (citations omitted).

The result must be the same in this case. Walker pleads nearly no facts, aside

from that the Decedent was in the jail, committed suicide and might have been

drunk. Instead, she disguises boilerplate and conclusion as fact. They're not facts, and there are no allegations any of the fictitious nurses drew a conclusion he was suicidal. That he may have been suicidal <u>two years</u> earlier has no more cachet here than did two months in *Jacobs*.

This claim is also littered with "should have knowns" [ECF #1, ¶¶71-72]. That hasn't been an appropriate basis for claims of this type for nearly 50 years.

Count IV is a Monell claim against YesCare. Because YesCare is a corporation, liability only attaches if an unconstitutional policy or custom of the corporation causes the alleged deprivation of constitutional rights, as "it is when execution of a government's policy or custom, whether made by its lawmakers or by those edicts or acts [that] may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir.2001) (*en banc*) (stating that a [corporation] is "liable under section 1983 only for acts for which the county is actually responsible"); *Buckner v. Toro*, 116 F.3d 450 (11th Cir.1997) (extending the application of *Monell* to private corporations performing traditional public functions). "A policy is a decision that is officially adopted by the [corporation], or created by an official of such rank that he or she could be said to be acting on behalf of the [corporation]. . . . A custom is a practice that is so settled and permanent that it takes on the force

of law." *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997).

"To establish a policy or custom, it is generally necessary to show a persistent and

widespread practice.  Moreover, actual or constructive knowledge of such customs

must be attributed to the governing body of the [corporation]."  *Depew v. City of*

*St. Mary's*, 787 F.2d 1496, 1499 (11th Cir. 1986).

However, a plaintiff must do more than merely identify a policy—there must

be allegations the policy was created with "deliberate indifference to its known or

obvious consequences."  *Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1375-

76 (11th Cir. 2000);  *Monell v. New York Dept. of Soc. Serv.*, 436 U.S. 658 (1978).

That is, " 'liability under § 1983 attaches where-and only where- a deliberate

choice to follow a course of action is made from among various alternatives' by

city policymakers."  *Brown* at 388 (quoting *Pembaur v. Cincinnati*, 475 U.S. 469,

683-84 (1986) (Brennan, J., plurality)).

A plaintiff's burden is heavy, and the 11th Circuit described both the required

showing and the reason for the heightened showing:

> This high standard of proof is intentionally onerous for plaintiffs;
> imposing liability on a municipality without proof that a specific
> policy caused a particular violation would equate to subjecting the
> municipality to *respondeat superior* liability-a result never intended
> by section 1983.  As the Supreme Court has explained, '[t]o adopt
> lesser standards of fault and causation would open municipalities to
> unprecedented liability under § 1983.  In virtually every instance
> where a person has had his or her constitutional rights violated by a
> city employee, a § 1983 plaintiff will be able to point to something the

city "could have done" to prevent the unfortunate incident.

*Gold v. City of Miami*, 151 F.3d 1346, 1351 n. 10 (11th Cir.1998); *see also Brown* at 415-16 (stating "[w]here a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into *respondeat superior* liability").

Walker has two methods to allege YesCare's unconstitutional policy: (1) an officially promulgated unconstitutional policy, or (2) a widespread unconstitutional and unofficial custom or practice created by a policymaker for YesCare. She must also allege the policy was created with knowledge that the Decedent's injuries were a highly probable consequence of the policy's creation. But most of all, she must back those allegations with fact, not mere conclusions and boilerplate. She does not. Additionally, because the claims against the fictitious nurses is insufficiently pled, this claim is also wanting. *Knight ex rel. Kerr v. Miami-Dade Cnty.*, 856 F.3d 795, 821 (11th Cir. 2017)( holding that "there can be no policy-based liability or supervisory liability when there is no underlying constitutional violation"); *see also Beshers v. Harrison*, 495 F.3d 1260, 1264 n.7 (11th Cir. 2007) (holding that "[w]e need not address the Appellant's claims of municipal or supervisory liability since we conclude that no constitutional violation occurred") (citations omitted).

### III.    <u>CONCLUSION</u>

For the foregoing reasons, YesCare requests that this Court grant its motion to dismiss.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g) and the Court's Order [ECF #26], the undersigned hereby certifies that he spoke with Orlando Sheppard on January 31, 2023 regarding this Motion. Mr. Sheppard said a motion to amend was likely, but he wanted to speak to his co-counsel. A follow-up email regarding the status was sent to both lawyers at 8:01 this morning. There was no response. YesCare considers the Motion opposed.


By:    /s/ Gregg A. Toomey
          Gregg A. Toomey
          Florida Bar No. 159689


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 2nd day of February, 2023 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF System, which will send a copy of the foregoing electronically to the following:

Orlando Sheppard
Burns Sheppard Favors
*Attorneys for Plaintiff*
121 S. Orange Ave., Suite 1500
Orlando, FL 32801-3241
P: 813-778-7359
E: orlando@bsflegal.com

James R. Tanner
Tanner Law Group, PLLC
*Attorneys for Plaintiff*
PO Box 130662
Tampa, FL 33681
P: 813-322-3565
E: jrt@jimtannerlaw.com

Thomas W. Poulton
Ana Cristina Cuello
DeBevoise & Poulton, P.A.
*Attorneys for Defendants Ivey and*
*Torquato*
1035 S. Semoran Boulevard, Suite 1010
Winter Park, FL 32792
P: 407-673-5000
F: 321-203-4304
E: poulton@debevoisepoulton.com
cuello@debevoisepoulton.com

THE TOOMEY LAW FIRM LLC
*Attorneys for Defendants Corizon*
*Health, Inc., Corizon Health Care of*
*Florida, LLC, CHS FL, LLC d/b/a*
*YesCare and CHS TX, Inc. d/b/a*
*YesCare*
The Old Robb & Stucky Building
1625 Hendry Street, Suite 203
Fort Myers, FL  33901
Phone:  239.337.1630
Fax:  239-337.0307
Email:  gat@thetoomeylawfirm.com,
alr@thetoomeylawfirm.com, and
hms@thetoomeylawfirm.com

By:   /s/ Gregg A. Toomey
        Gregg A. Toomey
        Florida Bar No. 159689